**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WAYNE DOYLE, SR.,**

    **Plaintiff,**

v.                                                               **Case No: 6:15-cv-2131-Orl-PGB-PRL**

**COMMISSIONER OF SOCIAL**
**SECURITY**

    **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying his application for Supplemental Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, I submit that the Commissioner's decision should be affirmed under sentence four of 42 U.S.C. § 405(g).

**I.  BACKGROUND**

Plaintiff filed an application for SSI benefits, alleging disability beginning June 10, 1974. (Tr. 188). The claim was denied initially and upon reconsideration. (Tr. 108). At Plaintiff's request, a hearing was held before Administrative Law Judge Michael Calabro (the "ALJ"), who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 13–26, 33).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15). At step two, the ALJ determined that Plaintiff had the

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

following severe impairments: HIV positive with symptoms, degenerative joint disease of the left knee, depressive disorder, and obesity.  (Tr. 15).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15–18).  Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967(b) except "no more than frequent climbing of ramps and stairs, balancing, stooping, crawling, crouching, and kneeling; no climbing of ladders, ropes, and scaffolds; no work near unprotected heights or dangerous machinery; and limited to simple, repetitive 1-2 steps tasks with occasional changes in the work setting."  (Tr. 18–24).

At step four, the ALJ determined that Plaintiff was able to perform his past relevant work as a construction worker II.  (Tr. 24–25).  In the alternative, at step five the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform—the light-work occupations of merchandise marker, office helper, and ticket taker.  (Tr. 25–26).  Thus the ALJ found that Plaintiff was not disabled since February 29, 2012, the date his application was filed. (Tr. 26).

Then, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner.  (Tr. 1–4).  With his administrative remedies exhausted, Plaintiff filed the instant appeal.  (Doc. 1).

**II.   STANDARD OF REVIEW**

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which

can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision.  *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  This is clearly a deferential standard.

### III. DISCUSSION

On appeal Plaintiff raises two issues: (1) whether the ALJ erred in finding that Plaintiff does not meet a listed impairment and (2) whether the ALJ properly considered the opinion of a mental health counselor. For the reasons set forth below, I submit that the ALJ did not err.

#### A. The ALJ's decision that Plaintiff does not meet a listed impairment is supported by substantial evidence

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence a plaintiff is presumptively determined to be disabled regardless of his or her age, education, or work experience. Thus an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *See Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

At this stage of the evaluation process, however, the burden is on the plaintiff to prove that he or she is disabled. *See Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. *See Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Further, an ALJ's finding that a claimant does not meet a listed impairment need not be explicit and may be implied from the record. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Thus the ALJ is not required to recite mechanically the evidence leading to his or her ultimate determination. *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015).

At issue here is whether Plaintiff has presented sufficient evidence to show that he suffers from an affective disorder under listed impairment 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04C(3).  Generally, under Listing 12.04, affective disorders are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome."  Further, paragraph "C" of Listing 12.04 provides that a claimant must show a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."  Finally, under paragraph C's third prong, a plaintiff must also show "a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00F, "*Effects of strutted settings*" (noting that in cases of chronic mental disorders where the overt symptomatology is controlled or attenuated by placement in a structured setting, the SSA must consider whether the claimant can function outside of the structured setting).

As a threshold matter, Defendant does not challenge whether Plaintiff meets the initial language of § 12.04 and paragraph C.  That is, Defendant does not dispute that Plaintiff has had a depressive disorder for at least two years that causes more than a minimal limitation on his ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support.  Indeed, the ALJ found that Plaintiff's depressive disorder causes more than minimal limitations on his ability to perform basic work activities and that he suffers from moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 15, 18).  Further, the record is clear that Plaintiff has suffered from depression (along with substance abuse) as early

as 2005, and perhaps earlier (Tr. 16, 397–99), and his depression treatment history is well documented here (Tr. 16–18, 397–99, 401, 488, 504, 554).

Defendant, however, disputes whether Plaintiff has provided sufficient evidence of meeting Listing 12.04C's third prong, which requires that he establish a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of a continued need for such an arrangement. To support his theory that he meets Listing 12.04C(3), Plaintiff testified that he has resided at The Center for Drug-Free Living, Inc. ("The Center"), a drug-treatment facility, for over two years. (Tr. 17, 37, 576).

Plaintiff also relies on a letter submitted by Roberto Katz, a counselor at The Center, which describes in great detail The Center's mission, Plaintiff's reasons for living there, and Plaintiff's ability to function there. (Tr. 576). But as explained below, though the letter is detailed and thorough, Plaintiff has nevertheless failed to present any evidence that he resides in The Center to manage his affective disorder (i.e., his depressive disorder); nor has Plaintiff presented evidence that he cannot function outside of The Center due to that disorder. *See, e.g.*, *Shaw v. Colvin*, No. 1:15-CV-74-MP-GRJ, 2016 WL 4385863, at *11 (N.D. Fla. May 12, 2016), *report and recommendation adopted,* No. 1:15-CV-00074-MP-GRJ, 2016 WL 4394167 (N.D. Fla. Aug. 15, 2016) (noting that it is the plaintiff's burden to show that he or she cannot live outside of a structured setting and that such "settings are meant to limit the mental demands on the resident, potentially controlling the 'overt symptomology' of the resident's *mental disorder*") (emphasis added).

For instance, according to Mr. Katz The Center was providing Plaintiff "a structured facility where he can work *on his recovery from substance abuse*." (Tr. 576) (emphasis added). Mr. Katz further opined that Plaintiff "presents a severe and extended history of *substance abuse*

that requires a structured style of life that prioritizes *recovery*." (Tr. 576). The counselor recommended that Plaintiff enter "another structured environment to continue his *recovery* and stabilization." (Tr. 576) (emphasis added). Further, the letter stated that "the reason [The Center] had allowed [Plaintiff] to continue [to live there] was that he had no means of maintaining a stable income and had been compliant with [The Center's requirements] at the level that he was capable."

The evidence also shows that The Center requires sobriety as a condition precedent to Plaintiff's residence and that Plaintiff has been clean for over fifteen months (Tr. 45–46, 62). *See, e.g.*, *Vann v. Astrue*, No. CA 09-249-GMS, 2011 WL 2416980, at *2 (D. Del. June 13, 2011) (concluding that when the plaintiff "had to remain clean from drugs for at least a month in order to enter [the structured setting], and "[s]ince the purpose of [the plaintiff] entering [the structured setting] was to help her refrain from drug use and since [the plaintiff] had been clean from drugs before she even entered [the structured setting], the evidence is sufficient to sustain the ALJ's finding that [the plaintiff] did not demonstrate an 'inability to function' outside [the structured setting], much less a continued need for such a living arrangement in the future"). Further, Plaintiff himself testified that he goes out to the movies, does his own grocery shopping, attends AA meetings, and attends group counseling (Tr. 48), and there is evidence that Plaintiff can care for himself and travel by public transportation on his own (Tr. 16, 237, 239, 253, 400). *See, e.g.*, *Shaw*, 2016 WL 4385863, at *11 (concluding that the plaintiff failed to show that she was unable to function outside of structured setting when she could shop and care for herself, among other activities).

To be sure, Mr. Katz also stated in his letter that The Center received Plaintiff due to his extended history of homelessness and lack of success in living independently; that The Center

provides him a stable and structured environment; that he can assume limited responsibilities within the structured environment, but those responsibilities require only limited instruction, direction, and effort; that Plaintiff is only responsible for making sandwiches two hours a week and keeping his living environment clean and organized; and, finally, that Plaintiff should remain in a structured environment after he leaves The Center.  (Pl.'s Br. at 10).  But despite all of this evidence, Defendant's argument is well taken: Plaintiff has failed to provide any indication that he resides in The Center in order to manage his *affective disorder* (i.e., his depressive disorder) or that he cannot function outside of the structured setting due to that disorder; Mr. Katz's letter shows instead that Plaintiff resides in The Center to manage his *substance abuse problem*.  (Df.'s Br. at 8).

Finally, Plaintiff has offered no other evidence to support his argument.  Without some evidence that Plaintiff resides at The Center due to his depressive disorder's effect on his ability to function outside of that structured setting, I must submit that Plaintiff has not met his burden here and thus substantial evidence supports the ALJ's finding that Plaintiff does not suffer from an impairment under Listing 12.04C(3).

**B.  The ALJ properly considered the opinion of counselor Katz**

Mental health counselors are not "acceptable medical sources" for establishing an impairment, 20 C.F.R. §§ 404.1513(a), 416.913(a), but are considered "other medical sources" whose testimony may be used "to show the severity of . . . impairment(s) and how it affects [the] ability to work."  20 C.F.R. § 404.1513(d)(1); *Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 901 (11th Cir. 2014).  Thus, as an "other medical source," a counselor's opinion is not entitled to any significant or controlling weight.  *See, e.g.*, *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012).

Here, counselor Katz opined in the letter mentioned *supra* that Plaintiff can only assume limited responsibilities within a structured environment, along with limited instruction, direction, and effort; he has a limited ability to remember and comprehend new information; and he experiences high levels of frustration when instructions and explanations are too elaborate. (Tr. 576). The ALJ thoroughly paraphrased Mr. Katz's entire letter and then gave the opinion some weight. (Tr. 23–24). For the following reasons, I find that the ALJ properly considered the opinion.

First, to the extent that the ALJ did discount Mr. Katz's opinion, the ALJ gave specific reasons for doing so. *See, e.g.*, *Colon v. Colvin*, No. 8:12-CV-02011-T-27, 2013 WL 4890312, at *2 (M.D. Fla. Sept. 11, 2013) (noting that an ALJ may properly discount the opinions of "other medical sources" by giving specific, germane reasons). The ALJ noted that other records from The Center failed to provide any objective medical findings that would support any additional limitations not accounted for by the RFC assessment. (Tr. 24, 555–75). Indeed, the only evidence that Plaintiff points to to support the limitations that Mr. Katz found is the ALJ's purported error in finding that Plaintiff does not meet Listing 12.04C(3) (see Pl.'s Br. at 12), but this argument fails as the ALJ properly found that Plaintiff does not meet any listed impairment (see *supra* III.A.). Also, the ALJ properly noted that Katz, who is not a physician, is not an acceptable medical source. *See Miles*, 469 F. App'x at 745.

Second, though Mr. Katz opined that Plaintiff would perform best in a structured environment, would have trouble understanding elaborate instructions, and would have trouble remembering and comprehending new information, the RFC assessment limits Plaintiff to simple, repetitive, one-to-two steps tasks with occasional changes in the work setting. Plaintiff fails to state or explain how the mental limitations that Mr. Katz opined of are inconsistent with the RFC

or otherwise provide for disabling or additional limitations not accounted for by the RFC. *See* (Tr. 24) (noting that Mr. Katz had failed to provide any specific limitations). Thus, given Plaintiff's failure to explain how Mr. Katz's opinion is inconsistent with the RFC assessment, the ALJ did not err. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."); *see also Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) (finding no reversible error when the ALJ did not address some of an examining physician's findings, as those findings were not inconsistent with the RFC findings and the ALJ relied on the physician's opinion); *Scott v. Astrue*, No. 5:10-CV-111-FTM, 2011 WL 1058960, at *7 (M.D. Fla. Mar. 21, 2011) (finding no reversible error when the ALJ failed to specifically assign a weight to a physician's opinion, because that opinion was consistent with the ALJ's decision). Accordingly, I submit that the ALJ properly consider Mr. Katz's opinion.

### IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ's decision should be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**RECOMMENDED** in Ocala, Florida on January 13, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy